FILED'10 APR 05 11:08USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CITY OF BAKER CITY, OREGON

Plaintiff,

v.

UNITED STATES of AMERICA, et al.,

Defendants.

Civil No. 08-717-SU

OPINION AND ORDER[1]

SULLIVAN, Magistrate Judge:

Baker City ("City"), a municipal corporation in Baker County, Oregon, filed its complaint under the Declaratory Judgment Act, 28 U.S.C 2201, and the Quiet Title Act, 28 U.S.C. 2409a, against the United State Forest Service, the United State Department of Agriculture, the United State Department of the Interior, the Bureau of Land Management, ("United States") and various private land owners in Baker County. The City alleges that it holds a water right for municipal purposes

[1]The parties have consented to jurisdiction over this matter by the magistrate judge pursuant to 28 U.S.C. § 636(c).

under the laws of the State of Oregon, and a grant, or right, for the operation and maintenance of a right-of-way to deliver the water to Baker City. The City alleges that the right-of-way crosses over land owned by the United States and others. The City has resolved its claims with regard to private landowners and the case proceeds against the United States.

The City seeks an adjudication of the validity of its right-of-way across public lands. The City also seeks a determination of the scope of the right-of-way. The City's partial summary judgment is limited to an adjudication of the validity of the right-of-way and filed in the form of nine separate motions designating six segments of the City's right-of-way consisting of various parcels of land owned by the United States. The government has conceded the City's right-of-way to some but not all of the parcels named in the City's complaint.

The City's motion for partial summary judgment is granted, in part, and denied, in part.

*Factual Summary*

The parties have filed stipulated facts as follows:

1. The City holds water rights granted by the State of Oregon to the waters of various springs and creeks that flow through the mountains north and west of the City. These water rights have a priority date dating from 1862 and 1868 under Certificate of Water Right, No. 80496, issued by the Water Resources Department of the State of Oregon ("OWRD"), dated January 15, 2004. The water right includes the right to store water in Goodrich Reservoir constructed in the 1860's and with a priority date of 1901. In 1961, the City applied for additional storage and use from Goodrich Reservoir which was granted by OWRD in certificates 39253(storage) and 39254(use).

2. The City claims a right-of-way over property owned by the United States referred to by individual parcels, i.e. Parcel 1 through 14, 16 through 44, 46 through 78, 80, 83, 84, 87, 88, 91, 93,

94, 97 through 100, 102 through 106, 114 through 116, 118 through 125. The right-of-way provides access to the waters covered by the water rights. The parcels not enumerated in the numerical sequence are parcels owned by private land owners with whom the City has resolved its claims. The parties have stipulated to the legal descriptions, current ownership, parcel status and designation of the legal claims to the validity of the City's right-of-way.

3. The United States has agreed, in part, to the City's motion for partial summary judgment. The parties have agreed that the following facts and legal authority are not in dispute:

a. **Motion I and VII.**

Segment 4, entitled the Auburn Line from Little Mill Creek to the Elk Creek Settling Tank, includes Parcels 23-44, 46-78, 80, 83-84, 87-88, 91, 93-94. The United States agrees that the City holds a valid right-of-way across Segment 4 pursuant to the Mining Act of 1866, 43 U.S.C. 661 ("1866 Act"). In addition, the United States agrees that the City holds an express easement over Parcels 93-94 granted by private land owners to the City prior to the acquisition of the property by the United States and included in the conveyances to the United States. See Exhibits 26 and 28 (Amended Stipulated Exhibit 83).

b. **Motion II and VIII.**

Segment 5, entitled the Elk Creek Line from Elk Creek to the Baker City Aqueduct, includes Parcels 97-100, 102-106, 114-116, 118-119, 120-124. The United States agrees that the City holds a valid right-of-way across Parcels 98-99, 103-106, 118-119, and 120-124 pursuant to the 1866 Act. The United States agrees that the City holds express easements over parcels 97, 100 and 102 granted by private land owners to the City prior to the acquisition of the property by the United States and included in the conveyances to the United States. See Exhibits 34, 35, 40 and 26 (Amended

Stipulated Exhibit 83). In addition, the United States agrees that the City holds express easements over Parcels 104-105 granted by private landowners to the City prior to the acquisition of the property by the United States and included in the conveyances to the United States. See Exhibits 45 and 46 (Amended Stipulated Exhibit 83).

c. **Motion V.**

Segment 1, entitled the Goodrich Reservoir, includes Parcels 1-4. The United States agrees that the City holds a valid right-of-way across Parcels 1-4 pursuant to the Act of July 1, 1905, 16 U.S.C. 524, also authorized under the Act of March 14, 1914, 38 Stat. 308. See Exhibit 2 (Amended Stipulated Exhibit 83).

4. The remaining motions, or parts of the motions, are in dispute and will be addressed below. These motions include:

a. **Motion II and IX.**

Segment 5, described above, includes Parcels 114-116 which remain in dispute. The City claims to have a right-of-way pursuant to the 1866 Act or, alternatively, an easement by prescription over these Parcels.

b. **Motion III.**

Segment 2, entitled the Goodrich Creek Line, includes parcels 3-13. The City claims to have a right-of-way over these parcels pursuant to the 1866 Act. The United States argues that the City has no vested right under the Act because no ditch or canal was constructed pursuant to the Act for the conveyance of the natural waters of Goodrich Creek.

c. **Motion IV.**

Segment 3, entitled the Auburn Line from Goodrich Creek to Little Mill Creek, includes

parcels 13-14, 16-23. The United States agrees that the City met the requirements of the 1866 Act to establish its right-of-way but that the right-of-way has been abandoned by the City through non-use.

d. **Motion VI.**

Segment 6, entitled the Elk Creek Line Realignment, includes Parcels 124-125. The United States has agreed that the City has a right-of-way pursuant to the Act of February 5, 1901, 43 U.S.C. 959, but argues that this claim should be dismissed for lack of jurisdiction under the Declaratory Judgment Act.

*Standard of Review*

Summary Judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. (56(c). All material facts are resolved in a light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The moving party bears the initial burden of showing no genuine dispute of material fact exists. *Id.* at 323.

The Declaratory Judgment Act provides that the district court has jurisdiction of suits brought "[in] a case of actual controversy within its jurisdiction,... upon the filing of an appropriate pleading, [and] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a). There is no independent basis for federal jurisdiction under the Declaratory Judgment Act. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983) *cited in Petroff v. Schafer*, 2009 WL 891024 (D. Ariz. 2009).

The Quiet Title Act provides "The United States may be named as a party defendant in a civil action ...to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights...." 28 U.S.C. 2409a(a). The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States. 28 U.S.C. 2409a(d).

*Discussion*

**1. Plaintiff's Motions I, II, in part, V, VII, VIII for Partial Summary Judgment.**

Based upon the stipulations of the parties plaintiff's motion for partial summary judgment is GRANTED for Motions I and VII (all of Segment 4), Motions II, in part, and VIII (Segment 5, excluding Parcels 114-116), Motion V (all of Segment 1).

**2. Plaintiff's Motion VI for Partial Summary Judgment.**

**a. Jurisdictional question.**

Plaintiff's Motion VI concerns Segment 6, Parcels 124-125, over which the City claims a right-of-way pursuant to the February 15, 1901 Act, 43 U.S.C. Sec. 959, and an express right-of-way grant by the BLM issued on November 3, 1971. The United States has stipulated to the express right-of-way under the 1901 Act, and agrees that the terms of the grant are as stated in the granting document. However, the United States argues that this court lacks subject matter jurisdiction under the Quiet Title Act. The United States contends that because the City's right-of-way is a revocable license under the 1901 Act and not an easement conferring a property right to the City, the City cannot allege the necessary elements of a Quiet Title Act. Defendant contends that a plaintiff cannot bring a complaint for Declaratory Judgment without an underlying basis for federal jurisdiction.

The court agrees with defendant that there is no freestanding jurisdiction under the Declaratory Judgment Act, *Franchise Tax Bd. v. Constr. Laborers Vacations Trust* at 16; *Petroff v. Schafer* at 4. However, there is a distinction between lack of subject matter jurisdiction and failure to state a claim on the merits of a case. *Cement Masons Health & Welfare Trust Fund v. Stone,* 197 F.3d 1003, 1005 (9th Cir. 1999).

To state a claim under the Quiet Title Act, a plaintiff must allege: (1) that the United States claims an interest in the real property at issue, and (2) that there is a disputed title to the property. 28 U.S.C. Sec.2409(a), (d). To establish such a dispute, the plaintiff must "set forth with particularity the nature of the right, title, or interest which plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." *Id.* Plaintiff has alleged the City's right-of-way regarding Parcels 124-125 acquired in accordance with the 1901 Act, 43 U.S.C. Sec. 959, and the grant issued in 1971, and the ownership interest of the United States in those parcels. Plaintiff alleges that it sought approval of a right-of-way over a portion of the so-called Elk Creek Line Realignment, Parcels 124-125, from the United States on December 5, 1969, and that on November 3, 1971, the City obtained a perpetual right-of-way under the 1901 Act over this realignment which has been continuously operated and maintained since 1969. Plaintiff seeks a declaration of the validity of its rights and obligations regarding this right-of-way. Plaintiff raises a legitimate question respecting the original grant and the rights granted under the 1901 Act, as well as the rights it claims after 1971 regarding this right-of-way. The jurisdictional requirements are met in this case. *Petroff v. Schafer* at 4.

**b. Validity of plaintiff's right-of-way.**

Plaintiff claims a perpetual right-of-way over Parcels 124-125 authorized under the 1901 Act

and granted on November 3, 1971. The United States concedes the express right-of-way grant but contends that the grant is a revocable license under 43 U.S.C. Sec 959, and may be canceled for either abandonment or nonuse at the discretion of the BLM. Defendant contests the nature of the right-of-way not its grant.

In 1976 Congress enacted the Federal Land Policy and Management Act (FLPMA) which authorized the Secretaries of Interior and Agriculture to "grant, issue, or renew rights-of-way over" public lands for "reservoirs, canals, ditches, flumes, laterals, pipes, pipelines, tunnels, and other facilities and systems for the impoundment, storage, transportation or distribution of water...." 43 U.S.C. Sec 1761(a)(1). The FLPMA repealed the 1901 Act, 43 U.S.C Sec 959, "... insofar as applicable to the issuance of rights-of-way over, upon, under, and through the public lands and lands in the National Forest System," (*see* Repeal of Section following statute). However, 43 U.S.C.1701 includes "Saving Provisions", Section 701 of Pub.L. 94-579, which provide, in pertinent part: "(a) Nothing in this Act..., or in any amendment made by this Act, shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act [Oct. 21, 1976]." *See Western Watersheds Project v. Matejko*, 468 F.3d 1099,1104 (9th Cir. 2006).

The parties do not dispute that the original right-of-way arose under the 1901 Act. The United States contends that the right-of-way was no more that a revocable permit under the 1901 Act and cannot now be any more than that. The City argues that while the 1901 Act provided the authority for the grant, in 1971 the BLM granted a right-of-way over Parcels 124-125 for the City's realignment project. Stipulated Exhibit 54, and 63. The November 3, 1971, BLM decision granting the right-of-way for the City's water pipeline specifically indicated the "Expiration date of grant"

as "Perpetual".

The court agrees that the Act of February 15, 1901, granted revocable licenses for rights-of-way, *see County of Okanogan v. National Marine Fisheries Service*, 347 F. 3d 1081, 1085-86 (9th Cir. 2003). However, in 1971, a perpetual right-of-way was granted to the City subject to the terms and conditions of the grant. Stipulated Ex. 54. There is no argument by the United States that the City has violated the terms of the 1971 grant. The FLPMA while repealing the 1901 Act, preserved the City's rights under the 1901 Act as well as the City's right to a perpetual right-of-way grant issued in 1971. 43 U.S.C. Sec. 1769(a) There is no evidence that the City has relinquished the 1971 right-of-way, nor does the United States argue that it has. Accordingly, the court finds that the City has a perpetual right-of way over Parcels 124 and 125.

Plaintiff's motion for partial summary judgment on Motion VI is granted.

**3. Plaintiff's Motion III and IV for Partial Summary Judgment.**

Plaintiff's Motion III concerns Segment 2, the Goodrich Creek Line, parcels 3-13, from Goodrich Reservoir to the diversion on Goodrich Creek into the Auburn Line. The City claims a right-of-way over parcels 3-13 under the 1866 Act,[2] and as a result of its maintenance and use of Goodrich Reservoir and Goodrich Creek as the waters were diverted into the Auburn Line. There is no dispute that the City has water rights for both Goodrich Reservoir, dating from 1901, and Goodrich Creek, dating from 1862. Stipulated Exhibits 66, 70, p. 13. The United States argues that the City has no right-of-way along the Goodrich Creek Line because Goodrich Creek is a natural stream and not a ditch or a constructed water conveyance feature as required by the 1866 Act.

---

[2] As previously stated, there is no dispute about the City's valid right of way across Parcels 1-4 regarding the Goodrich Creek Reservoir; however, a portion of Parcels 3 and 4 regarding the Goodrich Creek Line is in dispute.

Plaintiff's Motion IV concerns Segment 3, Parcels 13-14, 16-23 which is a pipeline on the Auburn Line portion of the City's water system. The United States does not dispute that the City has water rights and an easement concerning the pipeline under the 1866 Act but argues that the City has abandoned its easement to the pipeline because of nonuse. It appears that Segments 2 and 3 are adjacent as the water flowing from Goodrich Reservoir and Goodrich Creek was captured by the Auburn Line pipeline.

The 1866 Act, as amended by the Act of July 9, 1870, provides as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canal for the purposes herein specified is acknowledged and confirmed...."

"All patents granted, ... shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by this section." This language was specifically adopted by the 1976 Act. Pub.L 94-597, Title VII, Sec. 706(a), 90 Stat. 2793, Effective on and after Oct. 21, 1976.

**a. City's right-of-way over Parcels 3-13.**

The United States cites *Bear Lake & River Waterworks & Irrigation Co. v. Garland*, 164 U.S. 1 (1896), to support its argument that without construction of a ditch, the City has no vested right-of-way over Segment 2, Parcels 3-13. The *Bear Lake* decision concerned a question of priorities of two creditor liens regarding a canal owned by the debtor. The court held that no right-

of-way vested against the government under the 1866 Act without the performance of some labor on the canal in question. See *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 779 (10th Cir. 2006)(a case involving right-of-way for road construction under the 1866 Act)[3]. As explained below, the *Bear Lake* decision does not control in this case.

In *Jensen v. Kirk*, 98 U.S. 453 (1878), the Supreme Court recognized that the 1866 Act protected the vested water rights of owners and possessors of water rights that were recognized by local custom, laws, and decisions of the courts and rights-of-way incident to such water rights. *Id.* at 460-61. Nothing in the 1866 Act required the construction of a canal or ditch; rather, the rights-of-way for such constructs were recognized in the same manner as the vested water rights. See *Hinton v. Hannigan*, 177 Or. App. 196, 204, 33 P.3d 379 (2001).

It has long been the law in Oregon that water rights are maintained through beneficial use and application of the appropriated water. *Simmons v. Winters*, 21 Or. 35, 27 P. 7 (1891); *Nevada Ditch Co. v. Bennett*, 30 Or 59, 45 P. 472 (1896); *Fort Vannoy Irrigation District v. Water Resources Commission*, 345 Or 56, 87, 188 P. 3d 277 ( 2008). The appropriator could use either an original canal or ditch as constructed, or any other channel for the purpose of conveying the water to any point of use. *In re Water Rights of Deschutes River and Tributaries,* 134 Or 623, 640, 286 P. 563 (1930). Any ravine, gulch or hollow, as well as the natural channel, could be used in the transmission of water by the appropriator. *Simmons v. Winters* at 44. The appropriation is perfected when the water is diverted from its natural stream or channel and put to beneficial purposes. *Nevada*

---

[3] The court in *Southern Utah Wilderness Alliance* rejected the notion that some form of "mechanical construction" was required to perfect a road right-of-way. *Id.* at 777. Instead, the court pointed out that the right-of-way under the 1866 Act was governed by "long-standing principles of state law and common law". *Id.*

*Ditch Co. v. Bennett*, at 94.

The question here is not whether the City has a valid water right, as that has been agreed. The question in dispute is whether the City has a valid right-of-way for access to its water right over Parcels 3-13.

In *Hunter v. United States*, 388 F.2d 148 (9th Cir. 1967), the appropriator Hunter had a valid water right to waters of a stream within government property which was protected by the 1866 Act. Hunter claimed an easement for purposes of grazing cattle under the 1866 grant as this was incidental to the beneficial use of the water. While declining to extend grazing rights as an easement to Hunter, the court indicated that Hunter "should be allowed a right of way over [the government's] lands to divert the water by one of the methods contemplated by the statute." *Id.* at 155. Hunter was permitted to allege and prove his claim of easement for beneficial use of the water.

Here, the City contends that the waters of Goodrich Creek were put to beneficial use as part of conveyance system which included Goodrich Dam and the Auburn Line. The United States takes the position that because the natural stream is not a ditch, no right-of-way exists. The City is entitled to prove its claim to a right-of-way over Parcels 3-13. The City has submitted the Declaration of Michelle Owen regarding Segment 2. ("Owens Decl.") The statements made by Ms. Owens regarding the water system, while helpful as descriptive of the water system, are not sufficient without further evidence to establish as a matter of law the City's right-of-way over Parcels 3-13.

Plaintiff's Motion III for partial summary judgment is denied.

**b. City's right-of-way over Parcels 13-14, 16-23.**

The United States admits the City's original water right and right-of-way over Segment 3, Parcels 13-14, 16-23, but claims that the City has abandoned its 1866 Act right-of-way for nonuse.

The right-of-way concerns the use of a pipeline over Segment 3, the so-called Auburn Line, which has fallen into disrepair. The City disputes the claim of abandonment and asserts that it has "never expressed an intention" to abandon this right-of-way. Owen Decl., p. 9.

Under Oregon law, abandonment is established by evidence of nonuse, together with conduct inconsistent with an intention to make further use of the easement. Evidence of lack of use alone does not suffice. *Stonier III v. Kronenberger*, 230 Or. App. 11, 19, 214 P.3d 41 (2009). Abandonment must be established by clear and convincing evidence. Id. at 20. The issue of abandonment raises factual questions that cannot be resolved on summary judgment.

Plaintiff's Motion IV for partial summary judgment is denied.

**4. Plaintiff' Motion II and IX for Partial Summary Judgment.**

The City claims a right-of-way pursuant to the 1866 Act and, alternatively, that the City has a prescriptive easement over Segment 5, Parcels 114-116. The United States denies that the City has any right-of-way, either by grant or prescription, over these parcels.

**a. City's claim to 1866 Act right-of-way**.

The City contends that it acquired a valid right-of-way under the 1866 Act because its right-of-way was established prior to the land being patented into private ownership and conveyed to the government. The United States argues that the City's pipeline was constructed after the land was patented into private ownership and the reservations in the patent did not include the City's pipeline.

The record establishes that the Elk Creek Line includes portions in Parcels 114-116 and was in place at least by 1902. Ex. 47 (Amended Stipulated Exhibit 83, p. 32-33); Owen Decl., Ex. 1. Further, the record includes a patent dated August 30, 1897, conveying the land into private ownership, subject to any vested and accrued water rights. Ex. 51. The patent was not recorded in

the General Land Office of the United States until 1918. Ex. 51. The City argues that because the patent was not recorded until 1918, legal title did not transfer until that date and, therefore, title was subject to its right-of-way for the pipeline.

The record is unclear regarding the exact time that the Elk Creek Line was established. There is insufficient evidence that the purported right-of-way over Parcels 114-116 was established under the 1866 Act prior to the issuance of the patent in 1897. While the City argues that the patent did not convey title until recorded, this is not supported by case law. Title to public lands passes when the patent is issued. *Skinner v. Silver,* 158 Or. 81, 75 P.2d 21 (1938). The patent must be countersigned by the recorder of the General Land Office which appears to have been done here. Ex. 51; *McGarrahan v. Mining Company*, 96 U.S. 316 (1877). A failure to record a patent does not defeat the grant. *Id.* at 318.

The City cannot as a matter of law claim a right-of-way under the 1866 Act over Parcels 114-116. Plaintiff's Motion II regarding Parcels 114-116 is denied.

**b. City's claim to right-of-way by prescriptive easement.**

Alternatively, the City claims a right-of-way by prescription or adverse possession over Parcels 114-116. No claim for adverse possession may be asserted against the United States. 28 U.S.C. Sec. 2409a(n); *United States v. California*, 332 U.S. 19, 40 (1947). To prevail on its claim of easement by prescription, the city must prove its claim against the private landowner before the parcels were conveyed to the United States by private parties. *K & B Family LP v. United States*, 2007 WL 527937 (D. Or. 2007) and cases cited therein. Oregon law controls the claim for adverse possession against the United States' predecessor in interest. *Id.* at *5; *Friends of Columbia Gorge, Inc. v. U.S. Forest Service*, 546 F. Supp. 2d 1088,1106 (D. Or. 2008).

"A party seeking to establish a prescriptive easement must show open or notorious use of the property that is adverse to the rights of the owner for a continuous and uninterrupted period of ten years.... The 'continuous use' requirement is satisfied by evidence that the alleged use was consistent with the needs of the user during the prescriptive period....The 'open or notorious use' requirement serves the function of giving the owner of the servient estate ample notice to protect itself against the establishment of prescriptive rights,..., and is satisfied by evidence that the use was such that the owner had a reasonable opportunity to learn of its existence and nature. Open use for the prescriptive period gives rise to a rebuttable presumption of adverseness." *Motes v. Pacificorp*, 230 Or. App. 701, 707, 217 P.3d 1072 (2009)(citations omitted). Easements by prescription are not favored, and must be proved by clear and convincing evidence. *Id.*

At trial, the City must establish all of the factual elements of its claim of prescriptive easement against the owners of the property prior to conveyance to the United States regarding Segment 5, Parcels 114-116. *K & B Family LP v. United States* at *7. The record shows that a patent was issued in 1897 and that a pipeline was constructed sometime around the turn of the century. The City declares that it used and maintained a roadway and pipeline between 1900 and 1928 (Parcels 114-115) and between 1900 and 1977 (Parcel 116). Owen Decl. p. 11. Whether the City's use was adverse to the rights of the property owners during the requisite period of time as required by Oregon law present factual questions requiring proof at trial.

Plaintiff's Motion IX for Partial Summary Judgment is denied.

*Conclusion*

Based on the foregoing, plaintiff's Motion for Partial Summary Judgment (doc. #55) is GRANTED, in part, and DENIED, in part.

IT IS SO ORDERED

DATED this 2nd day of April, 2010.

s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge